In re TELIGENT, INC., et al., Debtors.

Savage & Associates, P.C. as the Unsecured Claim Estate Representative for and on behalf of Teligent, Inc., et al., Plaintiff,

v.

BLR Services SAS, et al., Defendants.

Bankruptcy No. 01–12974 (SMB).
Adversary No. 03–3615.

United States Bankruptcy Court,
S.D. New York.

April 13, 2004.

Savage & Associates, P.C., White Plains, NY, Denise L. Savage, JennyAnn Carles, of Counsel, for Plaintiff.

Kirkpatrick & Lockhart LLP, Washington, DC, Judith Sturtz Karp, Jennifer A. Mo, of Counsel, for Defendants.

## MEMORANDUM DECISION DISMISSING COMPLAINT AGAINST DEFENDANT ALEX MANDL

STUART M. BERNSTEIN, Chief Judge.

The plaintiff, the Unsecured Claims Estate Representative for Teligent, Inc., commenced this adversary proceeding to avoid and recover several alleged fraudulent transfers. Her complaint also included a common law damage claim against Alex Mandl, a former officer and director of Teligent, sounding in breach of fiduciary duty, as well as a turnover claim. Mandl moved to dismiss the claims under FED. R. CIV. P. 12(b)(6).

In light of the limitations imposed on her authority under Teligent's confirmed plan, the Court directed the plaintiff to show cause why the breach of fiduciary duty claim should not be dismissed for lack of standing. Having considered the submissions of the parties on this issue, I conclude that the claims asserted against Mandl should be dismissed.

## BACKGROUND

The complaint alleges, and I accept as true, that in or about September 2000, the defendant, BLR Services, SAS ("BLR"), entered into a joint venture with non-party TGNT France SA ("TGNT"), a foreign subsidiary and insider of Teligent, and the defendant, Louis Dreyfus Communications, S.A. ("Dreyfus"). (Complaint, ¶¶ 7–8.) At all relevant times, Mandl served as Teligent's chairman, president and chief executive officer, and also sat on Dreyfus's board of directors. (see id., ¶¶ 34, 40.)

The focus of the complaint is three transfers (the "Transfers") by Teligent to BLR, made between December 22, 2000 and March 1, 2001, in the aggregate sum of $7,743,981.14. (See id., Sch. "A.") The complaint states, at various points, that the Transfers were made for the benefit of TGNT, (id., ¶¶ 14, 19, 20, 21, 27, 28), or for the benefit of BLR and Dreyfus. (Id., ¶¶ 31, 32, 33, 36, 39, 41, 42.)

The complaint does not allege that the Transfers were made to or for the benefit of Mandl. Instead, the fifth claim for relief alleges, in substance, that Mandl orchestrated the Transfers in breach of his fiduciary duty to Teligent with the goal of bolstering Dreyfus's interest in BLR. Specifically, Mandl, a Dreyfus director, breached his fiduciary duties to Teligent by (a) putting "himself in a position where his individual interests were in clashed [sic] with his duties to the Debtors," (id., ¶ 47), utilizing "his power for his personal advantage and to the detriment of the stockholders and creditors," (id., ¶ 48), and manipulating "the affairs of the Debtors to the detriment of the stockholders and creditors and in disregard of the standards of common decency and honesty." (Id., ¶ 49.) The *ad damnum* clause demands

the entry of a money judgment against Mandl in the amount of the Transfers.

Mandl filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6). He argued that the plaintiff failed to plead a legally sufficient claim of breach of fiduciary duty or self-dealing under Virginia law. In addition, the seventh claim for relief demanded a turnover of the Transfers, and Mandl did not hold the Transfers.

At the January 22, 2004 hearing on Mandl's motion, the Court raised a threshold issue that neither party had addressed: the plaintiff's standing to sue Mandl for breach of fiduciary duty and seek money damages. As the complaint acknowledged, the Plan granted the plaintiff the authority to pursue avoidance actions under chapter 5 of the Bankruptcy Code. (Complaint, ¶ 4.) All other rights, including other causes of action, vested in Reorganized Teligent. As stated in a previous decision dealing with this issue

> [t]he Plan substantively consolidated the affiliated debtors into a single entity ("Reorganized Teligent"). Upon confirmation, all of the property of the estate revested in Reorganized Teligent with two exceptions. The "Chapter 5 Causes of Action" and the "Unsecured Claim Fund" were transferred to a newly formed legal entity, the "Unsecured Claim Estate Representative" (hereinafter, the "Representative"). (Plan, Art. III, ¶ B.5(b).) ... The "Chapter 5 Causes of Action" included "[a]ny and all of any Debtor's rights, claims, or causes under sections 542, 544, 545, 547, 548, 549, 550 and 552(b) of the Bankruptcy Code, whether known or unknown, in law, equity or otherwise, except to the extent waived or retained by the Debt-

ors during the Chapter 11 Cases or pursuant to the Plan." (Plan, Art. I, ¶ B.15.) *In re Teligent, Inc.*, 306 B.R. 752, 755 (Bankr.S.D.N.Y.2004).

Thus, unless the fifth claim fell under chapter 5 of the Bankruptcy Code, which did not appear to be the case, it belonged to Reorganized Teligent, and not the plaintiff. Accordingly, the Court directed the plaintiff to show cause why the complaint should not be dismissed as against Mandl, (Transcript of hearing, held Jan. 22, 2004 ("Tr.") at 7), and set a briefing schedule which is now complete.

## DISCUSSION

### A. Introduction

We begin with a self-evident proposition. The plaintiff's authority is no greater than her assignor's, the debtor in possession, who, in turn, enjoys the rights and powers of a trustee. 11 U.S.C. § 1107(a). A trustee's standing to pursue litigation comes from three sources—the debtor, the creditors and the Bankruptcy Code. First, with certain exceptions, the debtor's interests in property at the time of the commencement of the case become property of the estate. 11 U.S.C. § 541. As statutory successor to the debtor, the trustee stands in the shoes of the debtor, and may bring any suit that the debtor could have brought before bankruptcy. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir.1995); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991); *Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.)*, 194 B.R. 318, 324–25 (Bankr. S.D.N.Y.1996).

Second, under section 544,[1] the trustee also stands in the "overshoes" of

---

1. Section 544 of the Bankruptcy Code pro- vides:

the creditors. *In re Granite Partners, L.P.*, 194 B.R. at 324; *see Podell & Podell v. Feldman (In re Leasing Consultants, Inc.)*, 592 F.2d 103, 110 (2d Cir.1979)(decided under the former Bankruptcy Act). Subject to certain limitations, § 544(b) authorizes the trustee to avoid any transfer that an actual creditor holding an allowable claim could have avoided under applicable law.

Third, chapter 5 of the Bankruptcy Code grants the trustee certain powers that neither the debtor nor the creditors enjoyed prior to bankruptcy. Some overlap with those inherited from the creditors, such as the fraudulent transfer provisions in § 548. Others are unique to bankruptcy, and include the power to avoid statutory liens, 11 U.S.C. § 545, pre-petition and post-petition preferential transfers, 11 U.S.C. §§ 547, 549, and set offs. 11 U.S.C. § 553.

On the effective date of the Plan, the first category of rights vested in Reorganized Teligent; the second and third passed to the Estate Representative, the plaintiff in this adversary proceeding. The plaintiff's standing, therefore, depends on where the breach of fiduciary duty claim fits.

## B. Breach of Fiduciary Duty

 State law determines whether a claim belongs to the estate or to the individual creditors. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d at 1093; *Sobchack v. American Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600, 607 (2d Cir.1994); *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993). Each party analyzed the breach of fiduciary duty claim under Virginia law, and I will, therefore, treat Virginia law as controlling. *Cf. Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir.2000)(if both sides treat New York law as controlling in their memoranda, this is sufficient to establish New York as the governing law). Under Virginia law, a claim for breach of fiduciary duty belongs to the corporation, *Glaser v. Enzo Biochem, Inc.*, 303 F.Supp.2d 724, 752 (E.D.Va.2003); *see Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666, 675 (2001), and the plaintiff concedes this general point. (*See Plaintiff's Post Hearing Brief Responding to Court's Sua Sponte Order [etc.]*, dated Feb. 27, 2004 (*"Plaintiff's Brief"*), at 7)("it is well-settled that claims based upon breach of fiduciary duty belong to a corporation....")

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
 (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
 (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
 (b)(1) ... [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title....

In other words, Teligent could have sued Mandl for breach of fiduciary duty in connection with the Transfers prior to the petition date. This claim became property of the estate under 11 U.S.C. § 541, and revested in Reorganized Teligent on the effective date of the Plan. The fifth claim for relief seeks money damages, not avoidance or turnover, it did not pass to the plaintiff under the Plan, and she therefore lacks standing to assert it.

The plaintiff's contrary position suffers from at least two flaws, and lacks merit. First, the plaintiff points out that under Virginia law, a creditor of an insolvent corporation may sue the corporation's officers and directors for breach of fiduciary duty and self-dealing. *See Bank of America v. Musselman*, 222 F.Supp.2d 792, 798 (E.D.Va.2002)(Virginia law recognizes "that directors and officers may be liable to an insolvent company's creditors when the officers abuse their positions during insolvency by preferring themselves, over other creditors, in the repayment of loans made to the corporation"). In other words, the creditors and the corporation (or the shareholders, derivatively) may have the right to sue for the same wrong.

From this, she mistakenly reasons that the creditor's breach of fiduciary duty claim passed to the trustee under § 544(b) of the Bankruptcy Code, and to her under Teligent's Plan. Section 544(b) does not, however, clothe the trustee with *all* of the rights held by the creditors prior to bankruptcy. Instead, it reflects a narrow exception to the well-settled rule that a bankruptcy trustee lacks standing to assert general causes of action against third parties that belong to a debtor's creditors. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972)(decided under the former Bankruptcy Act); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d at 118;

*In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222, 1226–28 (8th Cir.1987). Section 544 "does not extend beyond avoidance actions, and does not permit [the Representative] to assert the personal, direct claims of creditors for the benefit of the estate or a particular class of creditors." *In re Granite Partners*, 194 B.R. at 324. The plaintiff overlooks the plain language of § 544(b) when she urges that it sweeps in common law tort claims that belong to creditors under state law.

Second, the plaintiff's opposition also ignores the plain language of § 550 of the Bankruptcy Code. Regardless of the source of the trustee's chapter 5 powers, § 550(a) defines the extent of her remedy:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

The Code separates the avoidance of a fraudulent transfer from the recovery of a fraudulent transfer. *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1196 (7th Cir.1989). "Once the grounds for setting aside a transfer have been shown, the Trustee faces the second hurdle of establishing a means of recovery under § 550(a), the remedies section, which requires the Trustee to identify a specific category of persons from whom recovery of the fraudulent transfer may be had." *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 312 (Bankr.S.D.N.Y.1999). Section 550 restricts the trustee to the recovery of the avoided transfer, or its value, from the

initial and subsequent transferees and the entities for whose benefit the transfer was made.

■ The plaintiff acknowledges that Mandl is neither a transferee nor a person for whose benefit the Transfers were made.[2] (Tr. at 11.) She contends, rather, that § 550 is "irrelevant," (*Plaintiff's Post–Hearing Reply Brief [etc.]*, dated Mar. 19, 2004 ("*Plaintiff's Reply Brief*"), at 3, 6 n. 3), because she is entitled to the remedy of a creditor under Virginia law. (*Id.* at 6 n. 3, 11–13.)

■ The argument misreads the Bankruptcy Code. Section 550 is the exclusive remedy for the plaintiff's § 544(b) claim. The plaintiff concedes that Mandl is not liable under § 550, and therefore, she has no claim against him.

Furthermore, the plaintiff misstates the holdings of cases decided in this district. According to her reply brief, *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr.S.D.N.Y.1999) and *Official Committee of Asbestos Claimants of G–I Holding, Inc. v. Heyman*, 277 B.R. 20 (S.D.N.Y. 2002) stand for the proposition that, under § 544(b), the trustee succeeds "to the rights of an unsecured creditor in existence at the commencement of the case who maintains the right to seek to void the transfer or obligation under applicable state law *or to bring other state law actions for damages.*" (*Plaintiff's Reply Brief* at 8)(emphasis added.) She also points to a third case that I decided, *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417 (Bankr.S.D.N.Y.1998), as "inferring and implying that the trustee's right

to do so was inherent." (*Plaintiff's Reply Brief* at 8 n. 5.)

Neither *Stratton Oakmont* nor *Heyman* said what the plaintiff claims they said. The cited portions discussed avoidance claims, not breach of fiduciary duty or other damage claims personal to creditors under state law. In *Stratton Oakmont,* Judge Brozman stated that under § 544(b), the trustee stepped into the shoes of an "actual unsecured creditor who could set aside a fraudulent transfer under the [Debtor & Creditor Law]." 234 B.R. at 311–12. The District Court reached the same conclusion in *Heyman,* and cited *Stratton Oakmont. See* 277 B.R. at 29. Both cases ruled that the trustee inherited a creditor's cause of action *to avoid a transfer.* Neither stands for the proposition that the trustee may assert a creditor's damage claim, and the plaintiff had no basis to make that statement in her reply brief.

Finally, *White Metal* neither inferred nor implied that a trustee has standing under § 544(b) to assert a creditor's damage claim for breach of fiduciary duty.[3] There, the trustee brought claims for breach of fiduciary duty in his capacity as statutory successor to the debtor and other claims to avoid and recover the value of fraudulent transfers in his capacity as statutory successor to creditors under § 544(b). The plaintiff seems blind to the distinction, yet the distinction exists.

## C. The Turnover Claim

The seventh claim for relief is the only other claim arguably asserted against Mandl. After incorporating the prior alle-

---

**2.** The complaint alleges that TGNT, Dreyfus and/or BLR are the entities for whose benefit the Transfers were made. BLR cannot, however, be both the transferee and the entity for whose benefit the Transfers were made. *See*

*Bonded Fin. Servs., Inc. v. European Am. Bank,* 838 F.2d 890, 896 (7th Cir.1988).

**3.** The reply brief does not identify the page of the decision.

gations, the complaint alleges that the Transfers are property of Teligent's estate, (Complaint, ¶ 52), and the plaintiff "may recover and seek a turnover of the Transfers." (*Id.*, ¶ 53.) Mandl's motion to dismiss argued that the complaint failed to allege that Mandl held any property subject to the turnover claim. While this is certainly true, the seventh claim also suffers from an erroneous legal assumption.

 Section 542(a) requires, with certain exceptions, that entities in possession of property of the estate must turn the property over to the trustee.[4] Fraudulently transferred property does not, however, become property of the estate until *after* it has been recovered. *See FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir.1992). The trustee cannot compel the turnover of non-estate property under 11 U.S.C. § 542, and circumvent the more restrictive fraudulent transfer claim in the process.

## CONCLUSION

The fifth claim for relief is dismissed based on the plaintiff's lack of standing, and the seventh claim is dismissed as against Mandl for failure to state a claim on which relief can be granted. Settle order on notice.

---

4. Section 542(a) states:

Except as provided in subsection (©) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.