**In re MOTORWERKS, INC., Debtor.**

**The State Bank and Trust Company, Plaintiff,**

v.

**Paul H. Spaeth, Trustee of the Estate of Motorwerks, Inc., Defendant.**

**Bankruptcy No. 05–32116.**
**Adversary No. 06–3334.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

July 13, 2007.

Adam J. Biehl, Bailey Cavalieri, LLC, Columbus, OH, for Wright-Patt Credit Union, Inc.

James D. Brookshire, Troy, OH, for State Bank & Trust Co.

## DECISION OF THE COURT GRANTING, IN PART, AND DENYING, IN PART, THE PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

LAWRENCE S. WALTER, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This matter is before the court on Plaintiff's Motion to Dismiss Defendant's Counterclaims or, in the Alternative, For More Definite Statement [Adv. Doc. 11]; the Objection of Defendant Paul H. Spaeth, Trustee of the Estate of Motorwerks, Inc. to Plaintiff's Motion [Adv. Doc. 16] and the Plaintiff's Reply Memorandum in Support of its Motion [Adv. Doc. 18].

### PROCEDURAL BACKGROUND

On October 10, 2006, Plaintiff State Bank and Trust Company ("State Bank") filed a complaint seeking declaratory judgment against Defendant Paul H. Spaeth, the Chapter 7 Trustee ("Trustee") for the bankruptcy estate of the Debtor, Motorwerks, Inc. ("Debtor") [Adv. Doc. 1]. In its complaint, State Bank requests declaratory judgment that it is the owner / assignee of certain pre-petition vehicle lease agreements involving State Bank and the Debtor, that the leases are not property of the Debtor's estate, and that State Bank has the first and best perfected lien on the leased vehicles that secure the obligations of the lessees under the leases.

The Trustee filed an answer acknowledging the prepetition relationship and lease agreements between State Bank and the Debtor, but denying the validity of many of the leases, assignments and/or security interests State Bank asserts in the vehicles [Adv. Doc. 9]. Furthermore, the Trustee's answer includes counterclaims against State Bank. The counterclaims assert actions for fraudulent transfers avoidable under the Bankruptcy Code and/or state law, preferential transfers avoidable under 11 U.S.C. § 547, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, equitable subordination, and an objection to proofs of claim filed by, or to be filed by, State Bank.

After the Trustee filed his answer, State Bank filed a motion to dismiss the Trustee's counterclaims or, in the alternative, a motion for a more definite statement [Adv. Doc. 11]. State Bank asserts that all of the Trustee's counterclaims fail as a matter of law and, thus, dismissal is appropriate pursuant to Fed R. Bankr.P. 7012 incorporating Fed.R.Civ.P. 12(b)(6). In the alternative, State Bank asserts that the counterclaims fail to disclose the facts underlying the Trustee's causes of action, especially with respect to the Trustee's allegations of fraud. Consequently, State Bank requests a more definite statement as to the facts forming the basis for the counterclaims. The Trustee has responded to State Bank's motion and the matter is now fully briefed and ready for disposition.

### FACTUAL BACKGROUND

For purposes of State Bank's motion to dismiss, the factual allegations in the Trustee's counterclaims are deemed true.[1] On

---

1. The facts as stated in this decision are taken from the Trustee's answer and counterclaim [Adv. Doc. 9] and do not constitute the findings of the court. For purposes of determin-

March 11, 2005, an involuntary Chapter 7 bankruptcy petition was filed against the Debtor, Motorwerks, Inc., an alleged vehicle leasing business. [Adv. Doc. 9, ¶¶ 35–36.] Mark Van Nest was the sole owner and principal officer and director of the Debtor. [*Id.*, ¶ 37.]

Between 1998 and 2003, Debtor had a business relationship with State Bank that included a lending arrangement referred to as a "floor plan." [*Id.*, ¶ 38.] Under the floor plan, Debtor would borrow funds by drawing upon a revolving line of credit provided by State Bank purportedly for the purpose of purchasing and leasing vehicles. [*Id.*] State Bank made advances to the Debtor by depositing funds into a floor plan bank account in the name of the Debtor to enable the Debtor to purchase the vehicles. [*Id.*] The Debtor, in turn, was to lease the vehicles to its customers. [*Id.*] The leases were typically financed by various lending and financial institutions including State Bank in many instances. [*Id.*] The advances authorized by State Bank with the revolving line of credit were up to $1,000,000.00. [*Id.*]

A typical leasing arrangement was structured as follows. Debtor would act through Mark Van Nest or employees to locate a vehicle which a customer wished to lease. [*Id.*, ¶ 39.] The Debtor would purchase the vehicle using the funds advanced by State Bank under the floor plan and then execute a lease with the customer. [*Id.*] Many times the leases were then purportedly assigned by the Debtor to State Bank as the funding source. [*Id.*] The funding source would then pay a commission to the Debtor. [*Id.*]

When the leases were assigned, the stream of payments was paid by the Debtor's customer, the lessee, to the lending institution that advanced the funds and took assignment of the lease. [*Id.*, ¶ 40.] In many of these lease transactions, the vehicles were titled in the name of the Debtor, with liens purportedly to attach to the vehicles in favor of the lending institution advancing the funds. [*Id.*]

In order to obtain advances of funds under the floor plan to purchase particular vehicles, Debtor was required by State Bank to submit certain documentation including, but not limited to, trust receipts identifying the specific vehicles to be purchased and containing such details as the Vehicle Identification Number (VIN), make, model and year of the vehicle. [*Id.*, ¶ 43.]

While the above describes a typical lease arrangement, the Trustee asserts, on information and belief, that many of the transactions involving State Bank were more unusual. The Trustee alleges that from September, 2000 through May 1, 2003, Mark Van Nest and or agents / employees of the Debtor submitted trust receipts to State Bank for the purchase of various vehicles under the floor plan.[2] [*Id.*, ¶ 44.] However, many of the trust receipts submitted for advances, while describing different vehicle models, listed identical VIN numbers. [*Id.*] The Trustee asserts that trust receipts with duplicate VIN numbers were submitted by Mark Van Nest or agents and employees of the Debtor at least 193 times between September of 2000 and May 1, 2003. [*Id.*] Furthermore, the Trustee asserts that the documentation submitted by the Debtor to

---

ing a motion to dismiss, the court is obligated to accept as true the facts set forth by the non-moving party which, in this case, is the Defendant–Trustee.

2. The Trustee asserts that the Debtor was insolvent during most of this period. [Adv. Doc. 9, ¶ 56.]

State Bank was often deficient in other ways. [*Id.*, ¶ 46.]

The Trustee believes that State Bank advanced funds to the Debtor under the floor plan even when the trust receipts included duplicative VIN numbers or the documentation was incomplete. [*Id.*, ¶¶ 46, 48.] Furthermore, the Trustee suggests that State Bank's advances were often in amounts significantly in excess of the loan limitations under the loan agreements between the Debtor and State Bank. [*Id.*, ¶ 50.] The Trustee contends that if State Bank had conducted due diligence by reviewing and monitoring the documentation submitted by the Debtor in support of the advances, it would have been clear that the information provided by the Debtor was false with respect to many of the transactions. [*Id.*, ¶ 48.]

The Trustee also alleges that the advances received by the Debtor from State Bank were not always used for their intended purpose, the purchase of vehicles. [*Id.*, ¶ 45.] Instead, Mark Van Nest or agents and employees of the Debtor used the funds for other purposes including but not limited to personal expenditures of Mark Van Nest and his relatives, payment of debt, and maintenance of a check kiting scheme. [*Id.*, ¶ 47.] The Trustee believes that the amount of funds misappropriated to pay personal expenses of Mark Van Nest and his relatives is at least $1,127,196.52. [*Id.*] The Trustee asserts that State Bank did not act prudently as a floor plan financier by failing to monitor the Debtor and perform due diligence to ensure that the floor plan advances were used for their intended purpose. [*Id.*, ¶ 49.]

With respect to check kiting, the Trustee alleges that between March 11, 2001 and March 11, 2005, Mark Van Nest engaged in a massive and elaborate scheme with respect to numerous bank accounts of the Debtor and with a number of financial institutions. [*Id.*, ¶ 51.] Mark Van Nest frequently drew checks on Debtor's bank accounts that did not have sufficient funds to cover the checks. [*Id.*] The checks were then deposited into other Debtor accounts. [*Id.*] The scheme generally went as follows. Before the check drawn on the first account was returned to the first bank for payment, Debtor deposited a check drawn on either the second account or other account into the first account. [*Id.*] Although there were insufficient funds to cover the check, the time delay in processing the check would create an artificially inflated balance. [*Id.*] Mark Van Nest was then able to take advantage of the false and artificially inflated balance, the "float," during the time period of processing the checks before they cleared. [*Id.*]

The Trustee asserts that State Bank's advances, deposited in the floor plan account, were used by Mark Van Nest in his check kiting scheme. [*Id.*, ¶¶ 52–53.] Specifically, Mark Van Nest wrote checks against the floor plan account or accounts taking advantage of the availability of provisional credits extended by State Bank when there were insufficient funds to support the checks. [*Id.*, ¶ 53.] Mark Van Nest would make deposits into bank accounts to cover the checks after expiration of the "float" period. [*Id.*] The Trustee asserts that the amounts of the advances requested from State Bank and deposited in the floor account frequently were not equal to the purchase price of various vehicles. [*Id.*, ¶ 54.] Instead, the advances requested from State Bank were in amounts necessary to cover checks unsupported by sufficient funds. [*Id.*] In other words, Mark Van Nest submitted trust receipts to State Bank based on fictional proposed vehicle purchases in order to obtain advances to "cover the float" in the check kiting scheme. [*Id.*]

The Trustee maintains that State Bank had knowledge of, or with the exercise of due diligence and care, should have had knowledge of the longstanding pattern of check kiting by Mark Van Nest. [*Id.*, ¶ 55.] Instead, despite the clear signs of check kiting and fraud, the Trustee asserts that State Bank continued to advance significant funds to the Debtor enabling Mark Van Nest to continue his fraudulent activities and to misrepresent the true financial condition of the Debtor to creditors. [*Id.*] This, in turn, led creditors to continue to extend loans and funding to the Debtor at a time when Debtor was unable to pay its debts as they became due. [*Id.*]

### STANDARD FOR DISMISSAL

Plaintiff State Bank requests dismissal of the Defendant–Trustee's counterclaims pursuant to Fed.R.Civ.P. 12(b)(6), incorporated in bankruptcy adversary proceedings by Fed. R. Bankr.P. 7012. State Bank argues that the Trustee's counterclaims fail to state any claim upon which relief can be granted.

Pursuant to Rule 12(b)(6), a plaintiff may challenge the legal sufficiency of a defendant's counterclaims in the same manner that a defendant may challenge the sufficiency of a plaintiff's complaint. *See May v. Nat'l Bank of Commerce*, 390 F.Supp.2d 674, 675 (W.D.Tenn.2004); *Ohio Bell Telephone Co. v. CoreComm Newco, Inc.*, 214 F.Supp.2d 810, 812–13 (N.D.Ohio 2002). The court "must treat all of the well-pleaded allegations of the complaint (or the counterclaim ...) as true, ... and must construe all of the allegations in the light most favorable to the non-moving party." *May*, 390 F.Supp.2d at 675. Fur- thermore, the court " 'may dismiss a [claim] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Id.* (further citations omitted).

### LEGAL ANALYSIS

#### A. Trustee's State Law Aiding and Abetting Claims—Standing

■ Initially, the court must determine whether the Trustee has standing to bring his fourth and fifth counterclaims asserted against State Bank. The Trustee cites 11 U.S.C. § 544(a) as his source of standing to pursue state law claims for aiding and abetting fraud and aiding and abetting breach of fiduciary duty.

■ A trustee's standing to pursue litigation against third parties springs from several sources. *Savage & Assocs., P.C. v. BLR Services SAS (In re Teligent, Inc.)*, 307 B.R. 744, 747 (Bankr.S.D.N.Y. 2004). First, a trustee may stand in the shoes of the debtor by bringing a cause of action belonging to the bankruptcy estate. *Id.* Section 541(a)(1) creates a bankruptcy estate that encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case" including causes of action that a debtor could assert. 11 U.S.C. § 541(a)(1); *Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 947 (6th Cir.1997). When a trustee pursues a cause of action under § 541(a), the trustee brings the action as successor to the debtor's interest in property and, as such, the trustee is subject to all defenses, including *in pari delicto*, that would have been available to the defendant against the debtor.[3] *Lutz v.*

---

**3.** Another source of a trustee's standing springs directly from the Bankruptcy Code itself. The Bankruptcy Code grants the trustee direct powers such as the ability to avoid certain types of transfers pursuant to 11 U.S.C. § § 547, 548 and 549. *Teligent, Inc.*, 307 B.R. at 748. This is not the source of the Trustee's standing to pursue the state law aiding and abetting claims in this case.

*Chitwood (In re Donahue Securities, Inc.),* 304 B.R. 797, 799 n. 4 (Bankr.S.D.Ohio 2003).

In this case, however, the Trustee does not assert standing as the successor in interest to the Debtor but, instead, as a creditor. The Trustee cites 11 U.S.C. § 544(a) as his source of standing which, he argues, allows him to bring his state law aiding and abetting actions standing in the shoes of a hypothetical creditor.

The language of § 544(a) gives a trustee the status of certain hypothetical parties including a hypothetical lien creditor whose lien arose as of the bankruptcy petition filing date.[4] 11 U.S.C. § 544(a); *Hazlett v. Suburban Tractor Co. (In re Palmer),* 365 B.R. 816, 2007 WL 949801, at *3 (Bankr.S.D.Ohio March 30, 2007). With this § 544(a) status, the trustee has the "strong arm" power to avoid transfers and obligations of the debtor to the same extent as the hypothetical lien creditor. 11 U.S.C. § 544(a); *Simon v. Chase Manhattan Bank (In re Zaptocky),* 250 F.3d 1020, 1023 (6th Cir.2001); *Palmer,* 2007 WL 949801, at *3. Thus, the Trustee's argument in this case is at least partially correct. Under § 544(a), the Trustee does indeed stand in the shoes of a hypothetical creditor. *Palmer,* 2007 WL 949801, at *3.

■ However, the powers of a trustee acting in the capacity of a hypothetical lien creditor under § 544(a) are not as broad as the Trustee claims. The language of § 544 provides a trustee with limited authority to use hypothetical lien creditor status to avoid transfers of the debtor's property under non-bankruptcy law. *See Alberts v. Tuft (In re Greater Southeast Comm. Hosp. Corp.),* 333 B.R. 506, 520 (Bankr.D.C.2005); *Goldin v. Primavera Familienstiftung, TAG Assocs., Ltd. (In re Granite Partners, L.P.),* 194 B.R. 318, 324 (Bankr.S.D.N.Y.1996). Contrary to the Trustee's argument, § 544 does not give a trustee the right to bring creditor causes of action for damages such as the aiding and abetting actions asserted in this case. *Greater Southeast Comm. Hosp.,* 333 B.R. at 520–21; *Granite Partners,* 194 B.R. at 324.

■ The limitation of a trustee's § 544 powers derives from the well-settled principle, dating back to before the enactment of § 544, that "... a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991). This principle is traced to the Supreme Court decision of *Caplin v. Marine Midland Grace Trust*

4. The language of § 544(a) provides:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

*Co. of New York,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). In *Caplin,* the Supreme Court held that under the former Bankruptcy Act, a chapter X trustee lacked standing to assert creditors' claims of misconduct against an indenture trust on behalf of the holders of debentures issued by the bankrupt entity. *Id.* at 428, 92 S.Ct. 1678. The Supreme Court concluded that nothing in the Bankruptcy Act provided the trustee with authority to collect money not owed to the estate. *Id.* Instead, the trustee's task is "simply to 'collect and reduce to money the property of the estates for which (he is trustee).'" *Id.* at 428–29, 92 S.Ct. 1678 (further citations omitted). Although *Caplin* was decided under the former Bankruptcy Act, numerous circuits, including the Sixth Circuit, recognize its continuing vitality under the Bankruptcy Code. *See Stevenson v. J.C. Bradford & Co. (In re Cannon),* 277 F.3d 838, 853 (6th Cir.2002) (citing *Caplin* and noting that if an action belongs solely to the estate's creditors, the trustee has no standing to pursue the claim). *See also Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,* 267 F.3d 340, 349 (3d Cir.2001); *Shearson Lehman,* 944 F.2d at 118; *Mixon v. Anderson (In re Ozark Restaurant Equipment Co.),* 816 F.2d 1222, 1226–30 (8th Cir.1987).

As noted by the Trustee, there are some courts that conclude that the "rights and powers" language of § 544(a) does, in fact, broaden a trustee's powers beyond avoidance of transfers thereby allowing the trustee to file any claim, including tort claims, that a creditor with a judicial lien or creditor's bill might possess.[5] *See, e.g. Raleigh v. Schottenstein (In re Wieboldt Stores, Inc.),* 131 B.R. 655, 668 (N.D.Ill. 1991); *Collins v. Kohlberg and Co. (In re Southwest Supermarkets, LLC),* 325 B.R. 417, 425–26 (Bankr.D.Ariz.2005) (concluding that § 544(a) vests a trustee with the "rights and powers" of creditors to bring certain damage actions in addition to avoidance actions); *PMSC, Inc. v. Porter (In re Porter McLeod, Inc.),* 231 B.R. 786, 792–93 (D.Colo.1999) (allowing a trustee to stand as a "creditor" under § 544(a) to bring the estate's tort claims and avoid the application of the *in pari delicto* defense).

However, this minority view has several flaws. First, it conflicts with the recognition by the Sixth Circuit and other courts of the ongoing vitality of *Caplin* and its holding that the trustee has no standing to pursue claims arising from injuries to others. *Cannon,* 277 F.3d at 853; *Greater Southeast Comm. Hosp.,* 333 B.R. at 519–20. Second, no provision in § 544(a) explicitly states that the "rights and powers" extended to a trustee include the ability to bring tort claims on behalf of injured creditors. 11 U.S.C. § 544(a); *Ozark Restaurant,* 816 F.2d at 1227 (while the enactment of § 544 expanded a trustee's role with respect to creditors, it was not changed to authorize the trustee to bring suits on behalf of the estate's creditors against third parties); *Greater Southeast Comm. Hosp.,* 333 B.R. at 520 (noting that the language does not transform a trustee into a "super creditor" with the ability to

---

5. Some of these courts make a distinction between "personal" and "general" claims of creditors based on whether individual creditors were injured or whether the injury was to the entire creditor body as a whole. As noted by the court in *Greater Southeast Comm. Hosp.,* this is a distinction without a difference. 333 B.R. at 519. Regardless of the number of creditors injured, if the trustee pursues a claim that does not belong to the estate, he has no standing. *Id.* On the other hand, if the trustee pursues a claim that could be pursued by either creditors or the debtor because it arises from diminution of the debtor's assets, the trustee pursues that action as successor to the debtor's interest under § 541.

raise causes of action not possessed by the estate). Instead, the precise language and tenor of § 544(a) only confer on the trustee the *status* of a creditor with a judicial lien or creditor's bill for the limited purpose of attaching or seizing property transferred by the debtor to a third party prior to bankruptcy. *Greater Southeast Comm. Hosp.*, 333 B.R. at 520; *Sigmon v. Miller–Sharpe, Inc. (In re Miller)*, 197 B.R. 810, 814–15 (W.D.N.C.1996); *Granite Partners*, 194 B.R. at 324.

Perhaps most significantly, the minority view fails to recognize the legislative history behind the enactment of § 544. As originally proposed, § 544 was to contain a subsection (c) that would have explicitly overruled *Caplin* and allowed a trustee to bring creditors' claims to benefit the estate. *Ozark Restaurant*, 816 F.2d at 1227–28 & nn. 9–10; *Greater Southeast Comm. Hosp.*, 333 B.R. at 518–19; *Rodolakis v. Shadduck (In re Shadduck)*, 208 B.R. 1, 3–4 (Bankr.D.Mass.1997). Section § 544(c) was deleted by Congress prior to enactment thereby raising the reasonable inference that Congress did not intend to overrule *Caplin* by enacting § 544. *Ozark Restaurant*, 816 F.2d at 1227–28 (deter-mining that Congress's refusal to enact subsection (c) sends a clear message that no trustee has the power under § 544 to assert general causes of action on behalf of estate creditors); *Greater Southeast Comm. Hosp.*, 333 B.R. at 518–19; *Shadduck*, 208 B.R. at 4–5.

Having analyzed the relevant case law and legislative history of § 544, the court agrees with the Eight Circuit that "nowhere in Sections 544(a) or (b), nor in other relevant provisions of the Code is there any suggestion that the trustee has been given the authority to collect money not owed to the estate." *Ozark Restaurant*, 816 F.2d at 1229–30. The court concludes that § 544(a) does not expand a trustee's abilities to bring actions beyond those seeking avoidance of transfers of a debtor's property to third parties. Consequently, § 544(a) does not confer standing on a trustee to bring creditors' tort actions under state law such as the Trustee's aiding and abetting claims in this case. Because this is the only basis cited for the Trustee's standing in this case, the Trustee's fourth and fifth counterclaims for aiding and abetting fraud and breach of fiduciary duty are dismissed.[6]

---

**6.** Although the Trustee cites § 544(a) as his sole basis for standing with respect to the aiding and abetting claims, his allegations also refer to damage done to the Debtor corporation and not just the creditors. [Adv. Doc. 9, ¶¶ 100, 104–105.] When a corporation suffers an injury through diminution of its value, the claim belongs to the corporation. *Granite Partners*, 194 B.R. at 325. While the Trustee could amend his complaint to clarify that he is alleging a direct injury to the corporation and, as successor to the Debtor, change his grounds for standing to 11 U.S.C. §§ 323 and 541, the ultimate outcome would be the same. The claims would be subject to dismissal on different grounds, specifically, the application of the *in pari delicto* defense. As this court recently noted in its *Amcast* decision, *in pari delicto* is an equitable defense referring to the plaintiff's participation in the same wrongdoing as the defen-dant. *Liquidating Trustee of the Amcast Unsecured Creditor Liquidating Trust v. Baker (In re Amcast Industrial Corp.)*, 365 B.R. 91, 122 (Bankr.S.D.Ohio 2007). The defense is used to prevent one wrongdoer from recovering from the other because each should bear the consequences of his own actions without recourse against the other. *Id.* Significantly, the Sixth Circuit has determined that *in pari delicto* is a defense that may be raised against a bankruptcy trustee to the extent that the defense could be raised against a debtor. *Id.* (citing *Terlecky v. Hurd (In re Dublin Securities, Inc.)*, 133 F.3d 377, 380–81 (6th Cir. 1997) and *Lutz v. Chitwood (In re Donahue Securities, Inc.)*, 304 B.R. 797, 799 n. 4 (Bankr.S.D.Ohio 2003)). In this case, the Trustee's counterclaims include allegations that State Bank, either knowingly or unknowingly, participated in the fraudulent activities of the Debtor acting through Mark Van Nest

## B. Trustee's Avoidance Claims—Identifying the Transfers to be Avoided

Next, State Bank asserts that the Trustee's fraudulent and preferential transfer avoidance claims pursued under both bankruptcy and state law, should be dismissed.[7] State Bank argues that the Trustee's claims lack the required specificity or particularity because they fail to identify the particular transfers that are preferential or fraudulent in nature. The court agrees with State Bank that the Trustee's avoidance claims lack the required specificity under the federal rules of civil procedure adopted in bankruptcy adversary proceedings. However, the court also takes into consideration the fact that pleading rules are liberally applied to bankruptcy trustees who bring their actions as third party outsiders based on secondhand information. For this reason, the court will allow the Trustee to amend his counterclaims rather than dismiss the claims outright.

Pursuant to Fed.R.Civ.P. 8, adopted in bankruptcy adversary proceedings by Fed. R. Bankr.P. 7008, a pleading setting forth a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must give a defendant sufficient notice of the pleader's claim and the grounds upon which it rests so that the defending party can prepare an adequate answer. *See Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.),* 339 B.R. 570, 575 (Bankr.D.Del. 2006); *Pardo v. Gonzaba (In re APF Co.),* 308 B.R. 183, 188 (Bankr.D.Del.2004); *Birdsell v. U.S. West Newvector Group, Inc. (In re Cellular Express of Ariz., Inc.),* 275 B.R. 357, 363 (Bankr.D.Ariz.2002).

▬ Applying this rule to preference and fraudulent transfer claims, the pleader must provide more than a mere recitation of the statutory elements of the cause of action. *Lexington Healthcare,* 339 B.R. at 575; *Cellular Express,* 275

---

and possibly other employees. [Adv. Doc. 9, ¶¶ 39–56.] Consequently, the *in pari delicto* defense would seemingly apply.

In arguing that *in pari delicto* would not apply, the Trustee cites the "adverse interest" exception. Under this exception, bad acts of an agent of the debtor will not be imputed to the debtor-corporation (and, consequently, *in pari delicto* will not apply) if the agent acts on his own behalf and adversely to the corporation. *Mediators, Inc. v. Manney (In re Mediators, Inc.),* 105 F.3d 822, 827 (2d Cir.1997); *Schnelling v. Thomas (In re Agribiotech, Inc.),* 2005 WL 4122738, at *9 (D.Nev. April 1, 2005). *See also First Nat'l Bank of New Bremen v. Burns,* 88 Ohio St. 434, 438, 103 N.E. 93, 94 (1913) (recognizing, under Ohio law, the adverse interest exception to the imputation of knowledge to a corporation). The Trustee argues that the actions of Mark Van Nest and other employees were for Mark Van Nest's own benefit and were adverse to the Debtor whose assets were diminished. However, the adverse interest exception is, itself, subject to an exception where the sole owner

or representative of the principal corporation participated in the fraudulent activities. *Mediators, Inc.,* 105 F.3d at 827 (where the sole shareholder is alleged to have stripped the corporation of assets, the adverse interest exception does not apply); *Agribiotech,* 2005 WL 4122738 at *9; *In re Crown Vantage, Inc.,* 2003 WL 25257821, at *7–9 (N.D.Cal. Sept.25, 2003) *(in pari delicto* prevents a trustee from bringing an action where the sole shareholder participated in the fraud). *See also First Nat'l Bank of New Bremen,* 88 Ohio St. at 445–46, 103 N.E. at 96 (recognizing, under Ohio law, the "sole actor" exception to the "adverse interest" exception). In this case, the Trustee admits in his counterclaims that Mark Van Nest was the sole owner and principal officer and director of the Debtor. [Adv. Doc. 9, ¶ 37.] Consequently, *in pari delicto* would apply in this case to prevent the Trustee from pursuing his state law aiding and abetting counterclaims.

7. State Bank does not question the Trustee's authority and standing to bring the avoidance actions pursuant to bankruptcy and state law.

B.R. at 363; *Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr.D.Del.2003). Instead, the pleader must identify the set of facts upon which he seeks to recover. *See Cellular Express*, 275 B.R. at 363. At the very least, the rules of procedure require the pleader of a preferential or fraudulent transfer claim to reasonably identify the types of transfers sought to be avoided. *Id.* Some courts have held that such identification must include the amount and date of the transfers together with the name of the transferor and transferee. *See Lexington Healthcare*, 339 B.R. at 575; *Valley Media*, 288 B.R. at 192. In determining whether a transfer is adequately identified, a good test "is to ask whether the defendant could respond to [the claim for relief] with an appropriate affirmative defense." *Cellular Express*, 275 B.R. at 363.

 In this case, the Trustee's preferential and fraudulent transfer claims fail to adequately identify the transfers to be avoided. In his first two counterclaims, the Trustee seeks to avoid fraudulent transfers pursuant to Ohio law under 11 U.S.C. § 544(b) and Ohio Rev.Code § 1336.01, *et seq.* and federal bankruptcy law under 11 U.S.C. § 548. [Adv. Doc. 9, ¶¶ 57–65 and ¶¶ 66–72.] In his allegations, the Trustee states that the Debtor's sole shareholder, Mark Van Nest, was engaged in fraudulent schemes, including check kiting, intended to defraud creditors. [*Id.*, ¶¶ 60 and 68–70.] The Trustee asserts that transfers made by the Debtor to State Bank during the statutorily relevant periods were part of the Debtor's fraudulent scheme. [*Id.*, ¶¶ 61–62 and 69–71.] However, the Trustee fails to identify, by date or amount, even one actual transfer from the Debtor to State Bank that is to be avoided.[8] Instead, the Trustee asserts that this information is currently unknown and will be the subject of discovery. [*Id.*, ¶¶ 65, 71.] The remainder of the Trustee's assertions parrot the relevant statutory language. [*Id.*, ¶¶ 63, 72.]

The same is true of the Trustee's third counterclaim to avoid preferential transfers pursuant to 11 U.S.C. § 547. [*Id.*, ¶¶ 73–93.] While this claim is somewhat more specific because it very generally identifies the types of transfers to be avoided, i.e. vehicle lease agreements assigned to or perfected by State Bank during the ninety (90) day period prior to bankruptcy and payments made on leases during that same period, the claim still fails to identify any of the avoidable leases or payments with any specificity. [*Id.*] Furthermore, the remainder of the Trustee's allegations, like those in his fraudulent transfer counterclaims, parrot the relevant statutory language of § 547. [*Id.*, ¶¶ 88–92.]

The problem with the Trustee's lack of specificity is that the counterclaims fail to provide State Bank with notice of the underlying transfers to be avoided hindering the bank's ability to prepare an adequate answer and affirmative defenses. The Trustee's omission of the identity of specif-

---

8. Although the Trustee did attach exhibits to his Answer and Counterclaims including a summary of purportedly fraudulent trust receipts given by the Debtor to State Bank describing different vehicles with identical VIN numbers [Adv. Doc. 9, Ex. 1] and an account register with State Bank showing payments and deposits [*Id.*, Ex. 2], these documents are not specifically referenced in the Trustee's preferential and fraudulent transfer counterclaims. The exhibits do not clarify which transfers, if any, that the Trustee is pursuing as preferential or fraudulent transfers and, thus, do not aid the Trustee in meeting the requirements of Rule 8. *See Lexington Healthcare*, 339 B.R. at 575 (summaries and charts included with a trustee's complaint were insufficient because they failed to provide the required detail as to each of the alleged transfers).

ic transfers to be avoided renders State Bank unable to respond to the counterclaims with affirmative defenses such as "the bank gave contemporaneous new value for that transfer," "that transfer was made in the ordinary course of business," or "the Debtor received reasonably equivalent value for that transfer." *See Cellular Express,* 275 B.R. at 363. As such, the court concludes that the Trustee's counterclaims fail to provide the minimum information required by Rule 8.

Because the claims are deficient, State Bank requests that the court dismiss the claims or, in the alternative, require the Trustee to amend the claims to provide a more definite statement. In making its determination of which action to take, the court is mindful of the policy that amendments to a complaint are to be liberally allowed. *See* Fed.R.Civ.P. 15(a) adopted in bankruptcy adversary proceedings through Fed. R. Bankr.P. 7015. Consequently, the outright dismissal of claims for lack of specificity, without providing an opportunity for amendment, is generally inappropriate. *Coffey v. Foamex L.P.,* 2 F.3d 157, 162 (6th Cir.1993); *Lexington Healthcare,* 339 B.R. at 575. A relaxed standard is particularly appropriate when specificity rules are applied to a bankruptcy trustee who is forced to plead his case based on secondhand information often obtainable only through discovery. *In re Insilco Tech., Inc.,* 330 B.R. 512, 520 n. 14 (Bankr.D.Del.2005); *Huntington Nat'l Bank v. Schwartzman (In re Schwartzman),* 63 B.R. 348, 355 (Bankr.S.D.Ohio 1986).

For these reasons, the court will deny State Bank's request for dismissal of the fraudulent and preferential transfer counterclaims (Counterclaims 1 through 3) and will, instead, require the Trustee to amend his pleading. The Trustee is granted sixty (60) days from the entry of this decision and related order to conduct any preliminary discovery required and amend his fraudulent and preferential transfer counterclaims to identify the transfers to be avoided with sufficient particularity or the counterclaims will be dismissed.[9]

### C. Trustee's Fraudulent Transfer Claims—Pleading Fraud with Particularity

State Bank further asserts that the more stringent requirements of Rule 9(b) apply to the Trustee's fraudulent transfer claims. Because the Trustee does not plead his fraudulent transfer claims with particularity, State Bank argues that the claims should be dismissed. With respect to this argument by State Bank, the court disagrees.

Fed.R.Civ.P. 9(b) incorporated into bankruptcy adversary proceedings by Fed. R. Bankr.P. 7009 requires a party to plead fraud with sufficient particularity to give the answering party notice of the misconduct that is being challenged.[10] *APF Co.,* 308 B.R. at 188. To meet Rule 9(b) requirements, the Sixth Circuit generally requires the party to provide the "time, place, and content of the alleged misrepresentation ... the fraudulent

9. As long as the Trustee's amended counterclaims add only factual detail regarding the transfers from the Debtor to State Bank, the amended counterclaims will arise from the same transaction or occurrence and will relate back to the original counterclaims pursuant to Fed.R.Civ.P. 15(c). *See Slone–Stiver v. Security Nat'l Bank and Trust Co. (In re Tower* *Metal Alloy Co.),* 193 B.R. 266, 272 n. 6 (Bankr.S.D.Ohio 1996).

10. While the circumstances constituting fraud must be pleaded with particularity, "malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

scheme; the fraudulent intent . . . and the injury resulting from the fraud." *Coffey*, 2 F.3d at 161–62. *See also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). Although this rule is applied somewhat more liberally to bankruptcy trustees, a defendant is still entitled to notice of his alleged misconduct and, as such, trustees remain responsible for pleading actual fraud with precision. *Lexington Healthcare*, 339 B.R. at 574; *OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 698–99 (Bankr.D.Del.2005).

Nonetheless, some courts find these fraud requirements inapplicable to fraudulent transfer claims because the claims do not necessarily require proof that the defendant engaged in some form of deceit, misrepresentation or fraudulent activity. *Lexington Healthcare*, 339 B.R. at 574–75. In fact, a fraudulent transfer claim based on constructive fraud need only allege that the transfer was made without reasonably equivalent value while the debtor was insolvent. *Id.* at 575. In other words, there is no logical reason to require a trustee to plead a defendant's fraud or misconduct with specificity if such fraud or misconduct is not an element of the trustee's fraudulent transfer claim.

In this case, the Trustee appears to allege that while the Debtor and its principal, Mark Van Nest, engaged in fraudulent schemes, State Bank was nothing more than an unwitting participant through the lending process and receipt of transfers arising from the Debtor's schemes. [Adv. Doc. 9, ¶¶ 61–62, 68–70.] The remainder of the Trustee's allegations relate to elements of constructive fraud that do not require proof that State Bank engaged in any misconduct. *See Lexington Healthcare*, 339 B.R. at 574–75. For these reasons, the court concludes that the more stringent requirements of Rule 9(b)

do not apply to the Trustee's fraudulent transfer claims except to the extent that Trustee rests his claims on allegations that State Bank actually engaged in fraudulent activity, misrepresentation or other misconduct. If the Trustee's claims are based in whole or part on State Bank's actual fraud, the Trustee must amend his complaint within sixty (60) days from the entry of this decision and related order to describe State Bank's participation with sufficient particularity to meet the requirements of Rule 9(b) and the Sixth Circuit.

## D. Trustee's Claims for Equitable Subordination and Disallowance

As a final matter, State Bank requests that the court dismiss the Trustee's sixth counterclaim for equitable subordination and seventh counterclaim for disallowance of proofs of claim because the Trustee predicates these claims on his successful litigation of the other counterclaims. Essentially, State Bank asserts that the Trustee's equitable subordination and disallowance counterclaims are derivative because they rely on court determinations in the Trustee's other claims such as a finding that State Bank engaged in fraud, inequitable conduct or received fraudulent and/or preferential transfers. Consequently, if all other counterclaims of the Trustee are dismissed, State Bank argues that the derivative equitable subordination and disallowance claims must also be dismissed.

While State Bank's argument is logical if all other claims are dismissed, the court has determined that it is more appropriate to allow the Trustee to amend his complaint to clarify certain aspects of his fraudulent and preferential transfer counterclaims rather than dismissing them outright. Because the court did not dismiss each and every one of the Trustee's other

counterclaims, the Trustee's derivative counterclaims also withstand dismissal.

▮▮▮▮▮ In the alternative, State Bank requests that the court order the Trustee to provide a more definite statement explaining the facts upon which his equitable subordination and disallowance claims are grounded. Upon review of the Trustee's sixth counterclaim, the court finds the Trustee's description of the inequitable conduct supporting his equitable subordination claim, i.e. failing to supervise and inspect the Debtor while in the position of a floor plan financier, to be sufficiently descriptive to meet Rule 8 requirements. [Adv. Doc. 9, ¶ 107.] Consequently, a more definite statement is unnecessary.[11]

▮▮▮ The court also finds a more definite statement unnecessary with respect to the Trustee's seventh counterclaim requesting disallowance of any and all proofs of claim filed by State Bank pursuant to 11 U.S.C. § 502(d). This section of the Bankruptcy Code states:

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d). This Code provision provides for the disallowance of claims of creditors who receive preferences, fraudulent transfers or other void or voidable transfers unless such creditors surrender the transferred property to the trustee in the case. *In re Southern Air Transport, Inc.*, 294 B.R. 293, 296 (Bankr.S.D.Ohio 2003). By its very language, § 502(d) predicates the disallowance of proofs of claim on the outcome of other causes of action such as the Trustee's preferential or fraudulent transfer counterclaims. There is no need for the Trustee to be more specific as to the basis for disallowance since, pursuant to the language of the statute, it will depend on the outcome of these other causes of action.

## CONCLUSION

For the reasons stated above, the court **GRANTS,** in part, and **DENIES,** in part, the Plaintiff's Motion to Dismiss Defendant's Counterclaims or, in the Alternative, For a More Definite Statement [Adv. Doc. 11] to the following effect:

---

11. In its motion to dismiss, State Bank fails to take issue with the legal substance of the Trustee's equitable subordination counterclaim (i.e. whether the conduct cited is sufficiently egregious to support equitable subordination). Instead, State Bank raises this substantive argument for the first time in its reply memorandum. [Adv. Doc. 18, p. 17.] It is generally inappropriate for a court to consider novel arguments raised for the first time in a reply. *See United States v. Demjanjuk,* 367 F.3d 623, 637 (6th Cir.2004); *Oil States Int'l., Inc. v. LTV Corp.,* 2006 WL 3022971, at *5 (N.D.Ohio Oct.23, 2006). For this reason, the court will not entertain the argument. Nonetheless, the court notes that equitable subordination is considered an extraordinary remedy and the Trustee will face a high standard of proof at trial. *See Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.),* 269 F.3d 726, 744–45 (6th Cir. 2001) (determining that equitable subordination is an unusual remedy to be applied in limited circumstances and requiring proof of more egregious conduct, such as fraud, overreaching or spoliation, when the conduct complained of is that of a non-insider to the debtor); *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Financial Services, Inc.),* 974 F.2d 712, 717–18 (6th Cir.1992); *Ralph v. Stock Yards Bank and Trust Co. (In re Kentuckiana Truck & Trailer Repair, Inc.),* 291 B.R. 84, 94–95 (Bankr.W.D.Ky.2002); *In re Colfor, Inc.,* 1998 WL 70718, at *3–4 (Bankr. N.D.Ohio Jan.5, 1998).

1) These counterclaims in the Trustee's Answer and Counterclaims [Adv. Doc. 9] are dismissed for failure to state a claim:

a) Fourth Counterclaim: Aiding and Abetting a Fraud; and

b) Fifth Counterclaim: Aiding and Abetting a Breach of Fiduciary Duty.

2) These counterclaims in the Trustee's Answer and Counterclaims [Adv. Doc. 9] fail to provide the required specificity and must be amended within (60) sixty days of the entering of this decision and the related order or they will be dismissed:

a) First Counterclaim: Fraudulent Transfers—11 U.S.C. § 544(b)/O.R.C. § 1336.01, *et. seq.;*

b) Second Counterclaim: Fraudulent Transfers—11 U.S.C. § 548; and

a) Third Counterclaim: Avoidance of Preferential Transfers Relating to Lease Assignments—11 U.S.C. § 547.

**SO ORDERED.**